UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BLEPHEX, LLC,

                                Case No.: 19-13089

          Plaintiff,                 Hon. Gershwin A. Drain

v.


MYCO INDUSTRIES, INC. *et al.*,

          Defendants.

_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION [ECF NO. 10]

BlephEx, LLC ("BlephEx") is the owner of United States Patent No. 10,449,087 (the "'087 Patent"). On October 22, 2019, BlephEx filed the instant action alleging Myco Industries, Inc. ("Myco") and John R. Choate have engaged in direct and indirect infringement of one or more of the '087 Patent claims in violation of 35 U.S.C. §§ 271(a), (b) and (c).

Presently before the Court is the Plaintiff's Motion for Preliminary Injunction. Plaintiff argues the Defendants' ABMax™ device infringes at least Claim 16 of the '087 Patent. Plaintiff requests that the Court enter an order preliminarily enjoining Defendants from selling or offering to sell the ABMax™ device until a final judgment is entered in this action. Defendants filed a Response opposing entry of a preliminary injunction and Plaintiff filed a Reply in support of its present motion. A hearing on this matter was held

on October 5, 2020.  For the reasons that follow, the Court will grant Plaintiff's Motion for a Preliminary Injunction.

## II.    FACTUAL BACKGROUND

Dr. James M. Rynerson is the President and owner of BlephEx, LLC and the sole inventor of the '087 Patent. The patent application which issued as the '087 Patent was filed on March 13, 2019.  The '087 Patent is related to United States Patent No. 9,039,718 ("'718 Patent"), which is currently at issue in parallel litigation between the parties (the "'718 litigation").

On October 22, 2019, the United States Patent and Trademark Office (USPTO) issued the '087 Patent, titled "Instrument for Treating an Ocular Disorder." The '087 Patent discloses that "[a]n instrument for removing debris from an eye during the treatment of an ocular disorder has a swab and a rigid member." *See* '087 Patent, Abstract.

Ocular disorders of the eyelids and eyelid margins include blepharitis, dry eye syndrome and meibomitis.  Blepharitis is a chronic inflammatory disease of the eyelids and eyelid margins caused by the presence of an overgrowth of bacteria sometimes referred to as scurf or debris.  This overgrowth of bacteria and resulting toxins can lead to significant damage if they are not removed.

The '087 Patent specification explains that ocular disorders of the eyelid margin, including blepharitis, have historically involved ineffective home treatment methods such

as instructing patients to "physically scrub the eyelid margin, the base of the eyelashes, and the pores of the meibomian glands" with a generic cotton swab, scrub pad or fingertip. *Id.*, 1:56-60. Such methods proved to be problematic because "patients routinely fail to totally cleanse the margin of the eyelid, the base of the eyelashes, and the meibomian glands." *Id.* at 2:12-14. Dr. Rynerson, a board-certified ophthalmologist, sought to address the problems with prior treatment methods with a novel, electromechanical device for eye care professionals to use for cleaning patients' eyelid margins and eyelashes.

The '087 Patent includes 20 claims, with Claims 1, 11 and 16 being independent claims. Claim 16 states:

> A method of treating an eye for an ocular disorder with a swab operably connected to an electromechanical device, wherein the eye has an eyelid margin and includes a removable debris, the method comprising:
>
> [16.a] effecting movement of the swab relative to the electromechanical device, the swab having at least a portion thereof configured to access a portion of the eyelid margin;
>
> [16.b] while the swab is being moved by the electromechanical device, contacting a portion of the eyelid margin that includes the removable debris with the swab thereby impacting the debris with the swab to remove the debris from the eye.

Plaintiff manufactures and sells the BlephEx® device, which practices the method of cleaning the eyelid margin claimed in the '087 Patent. The BlephEx® is an electromechanical device that rotates a swab, which is used to clean debris from a patient's eyelid margin. Plaintiff introduced the BlephEx® device, its core product, to

the market in 2013. Once an eye care professional purchases a BlephEx® device, she will become a repeat customer for the disposable tips (swabs) of the device.

Dr. Rynerson alleges that his treatment protocol has revolutionized the treatment of eye disorders such as blepharitis. Within two years of the BlephEx® device's introduction into the marketplace, it had been adopted by over 1,000 ophthalmic practices. Thousands of BlephEx® devices have been sold to date. In 2017, the Association of Optometrists selected the BlephEx® device as a finalist for "Product of the Year," noting that "it provid[es] blepharitis sufferers with immediate relief and results."

Defendant John Choate is a former employee of RySurg, a predecessor company to BlephEx. Choate is the Chairman of Defendant Myco. Plaintiff alleges that Defendant Choate attempted to take credit as the inventor of the treatment device and method described in BlephEx's patents. Without Dr. Rynerson's knowledge, Defendant Choate filed a patent application in his own name for substantially the same treatment device and method. Ultimately, as part of a settlement agreement arising from this and related disputes executed, and later amended in 2017, the parties agreed that Defendant Choate would "abandon U.S. Patent App. No. 14/229,275 and any and all patent applications and/or patents related thereto" to BlephEx. ECF 10, Ex.62, PageID.682. The '087 Patent is related to the '275 Patent application because they are in the same patent family.

Despite the parties' settlement agreement, Plaintiff asserts Defendants continue to profit from Dr. Rynerson's inventive eyelid margin and eyelash cleaning product and method by launching their ABMax™ product in February of 2019.  Plaintiff maintains the ABMax,™ when used by eye care professionals as instructed by Defendants, directly infringes at least claim 16 of the '087 Patent.

The BlephEx® and the ABMax™ directly compete in the small, niche market for treatments for eyelid and eyelid margin ocular disorders.  Like the BlephEx®, the ABMax™ uses a rotating swab to clean a patient's eyelid margin. The ABMax™ website states that the product "provides the same forward and reverse functionality as our competitor's device PLUS, a patent pending PULSE mode specifically engineered to remove even the most tenacious scurf and debris, while massaging the anterior eyelid margins for better patient outcomes."  The alleged infringing ABMax™ product is intended to do the same thing that the BlephEx® does, but for a fraction of the cost of the BlephEx® product.  In fact, Defendants market the ABMax™ by encouraging eye care professionals to trade in the competitor's device for an ABMax™ and advertising on its website that "[t]he ABMax™ handpiece is less than one third the cost of the competition's device."

Since the release of the ABMax™ device, BlephEx has been inundated with requests from customers and potential customers to lower its price to match the price of the ABMax™ product.  On October 29, 2019, a now-former BlephEx® customer sent

email correspondence to Plaintiff complaining that he "sees no reason to pay double for the same thing."  ECF 10, Ex. 39, PageID53.  Due to Myco's launch of the ABMax™ device, Plaintiff has lowered the price of the BlephEx® device by 33%.

The introduction of the ABMax™ into the small market has created consumer confusion, for example, when a doctor recently contacted Plaintiff to inquire why he was not offered the advertised price of $1,495 – the price of the ABMax™ – believing the advertisement was for a BlephEx® product. Additionally, a distributor sent an ABMax™ advertisement to BlephEx inquiring whether it was BlephEx's product.

In the parallel '718 Litigation, Defendants allege, as recently as July of 2020, that they continue to market, sell and induce others to use the ABMax™ for treating anterior blepharitis.  *See Myco Industries, Inc. v. BlephEx, LLC*, Case No. 19-10645, ECF No. 88, PageID.4803, 4805.  A review of Myco's website confirms that it continues to sell the accused ABMax™ device.

Plaintiff filed the instant action on the same day the USPTO issued the '087 Patent and moved for preliminary injunctive relief fourteen days thereafter.  Plaintiff argues it will not be able to absorb the continued losses in sales and price erosion from Defendants' marketing and sale of the ABMax™ device until the January 2022 trial in this matter.

### III.   LAW & ANALYSIS

#### A.  Standard

In order to determine whether a patentee is entitled to preliminary injunctive relief, the Court must evaluate and balance the following factors: (1) whether Plaintiff has a strong likelihood of success on the merits, (2) whether Plaintiff will suffer irreparable harm in the absence of preliminary relief, (3) whether preliminary relief will cause harm to others, and (4) whether an injunction is in the public interest.  *See Metalcraft of Mayville, Inc. v. The Toro Co*., 848 F.3d 1358, 1363 (Fed. Cir. 2017).  "[N]o factor is dispositive; the district court must weigh the factors against each other and against the form and magnitude of requested relief."  *Tate Access Floors  v. InterFace Architectural Res.*, 279 F.3d 1357, 1365 (Fed. Cir. 2002).  In the context of a preliminary injunction enjoining patent infringement, "a preliminary injunction preserves the status quo if it prevents future [infringing] trespasses" of the patent.  *Atlas Powder Co. v. Ireco Chem*., 773 F.2d 1230, 1232 (Fed. Cir. 1985).

#### B.  Success on the Merits

##### 1.  Infringement

As to likelihood of success on the merits, the patentee "must show that it will likely prove infringement and that it will likely withstand challenges, if any, to the validity of the patent."  *Tinnus Enter., LLC v. Telebrands Corp*., 846 F.3d 1190, 1202 (Fed. Cir. 2017).  "An accused infringer can defeat a showing of likelihood of success on

the merits by demonstrating a substantial question of validity or infringement." *Id.* (internal quotation marks and citation omitted).

An infringement analysis consists of "two steps in which the court first determines the correct claim scope, and then compares the properly construed claim to the accused method or device to determine whether all of the claim limitations are present either literally or by a substantial equivalent." *RF Delaware, Inc. v. Pacific Keystone Techs., Inc.*, 326 F.3d 1255, 1266 (Fed. Cir. 2003) (citation omitted).

Here, the parties stipulated to using the Court's '718 litigation constructions for the claim terms "eyelid margin," and "configured to access," as well as stipulated to the construction of the claim term "swab." As such, "eyelid margin" means "the edge of an eyelid, which is divided into an anterior portion and a posterior portion by the physiological feature of the gray line." The claim terms "configured to access" means "designed to access." The parties have agreed that the claim term "swab" means "a wad of cotton, gauze, or other absorbent material usually attached to the end of a stick or clamp, used for applying or removing a substance from a surface."

The Court concludes the ABMax™ necessarily performs every step of claim 16 when used as Defendants instruct. *See* Dec. of Dr. Penny Asbell, ABMax™ instruction manual. The preamble to Claim 16 states, "[a] method of treating an eye for an ocular disorder with a swab operably connected to an electromechanical device, wherein the eye has an eyelid margin and includes a removeable debris." The Court has construed "eyelid

margin" to mean "the edge of an eyelid, which is divided into an anterior portion and posterior portion by the psychological feature of the gray line."

The ABMax™ instruction manual instructs practitioners to use the ABMax™ handpiece and microsponge to exfoliate and debride the anterior eyelid margin by contacting the "outer eyelid margin of the chosen lid and lash line" in order to "remove the scurf, debris, dead skin, etc." ECF No.1, PageID.58, 60.  Defendants' website expressly states that the ABMax™ is for the treatment of blepharitis, and in particular anterior blepharitis.  The ABMax™ device easily satisfies Claim 16's preamble.

The ABMax™ device also satisfies the next limitation of Claim 16 –"effecting movement of the swab relative to the electromechanical device, the swab having at least a portion thereof configured to access a portion of the eyelid margin."  The ABMax™ instructions state that the user must "[p]ress and hold the button for three (3) seconds to start the ABMax™ in the forward mode." *Id*., PageID.59.  This causes the swab of the device to start spinning, i.e., "effecting movement of the swab relative to the electromechanical device."  Dec. of Dr. Penny Asbell, ECF 10, PageID.732.  The ABMax™ instruction manual further states that practitioners "apply the spinning ABMax™ microsponge to the outer eyelid margin of the chosen lid and lash line in a swirling and scrubbing motion."  ECF No. 1, PageID.60.  This shows the ABMax™ is configured to access a portion of the eyelid margin as required by the first element of Claim 16. *Id.*

The ABMax™ instruction manual also instructs eye care professionals to perform the second step of Claim 16, or "while the swab is being moved by the electromechanical device, contacting a portion of the eyelid margin that includes the removeable debris with the swab to remove the debris from the eye."   The ABMax™ manual teaches practitioners to "apply the spinning ABMax™ microsponge to the outer eyelid margin of the chosen lid and lash line in a swirling and scrubbing motion" to "remove the scurf, debris, dead skin etc." ECF No.1, PageID.59.

Plaintiff has shown a strong likelihood of success on the merits of its direct infringement claim because the '087 Patent is necessarily infringed when the ABMax™ is used in accordance with the ABMax™ instruction manual.  *See* Dec. of Dr. Penny Asbell, ECF 10, PageID.732.   Defendants have failed to advance any argument or evidence demonstrating that a limitation is missing when the accused ABMax™ is used as Defendants instruct.   "[W]here an alleged infringer designs a product for use in an infringing way and instructs users to use the product in an infringing way, there is sufficient evidence" for a finding of direct infringement. *Toshiba Corp. v. Imation Corp*., 681 F.3d 1358, 1365 (Fed. Cir. 2012); *see also Moleculon Research Corp. v. CBS, Inc*., 793 F.2d 1261, 1272 (Fed. Cir. 1986); *Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301, 1318 (Fed. Cir. 2009).

Plaintiff has provided evidence that Vision Optique, Dr. Robert Gerowitz, Dr. Philip Wren, Dr. Philip Haiman and Dr. Silberberg have purchased the ABMax™ and

that Defendants continue to make, market, sell and induce others to use the ABMax™ device to treat blepharitis.  Finally, Defendants had knowledge of the '087 Patent at least since service of BlephEx's Complaint, however Plaintiff alleges that Defendants had knowledge much earlier because they knew of the application that issued as the '087 Patent having inquired about it in a June 14, 2019 letter through counsel.

To prove inducement, Plaintiff must show (1) a third party directly infringed the asserted claims, (2) Defendants induced those infringing acts, and (3) Defendants knew the acts they induced constituted infringement.  *3M v. Chemque, Inc.*, 303 F.3d 1294, 1304-05 (Fed. Cir. 2002).  Because Claim 16 is necessarily infringed when eye care professionals, such as those working at Vision Optique, use the ABMax™ device in accordance with Defendants' instruction manual, BlephEx has shown a strong likelihood of success on the merits of its inducement claim under § 271(b).  *Dynacore Holdings Corp. v. U.S. Philips Corp*., 363 F.3d 1263, 1275-76 (Fed. Cir. 2004).  Defendants do not dispute that they continue to market and sell the ABMax™ device to eye care professionals, the ABMax™ device is the same as when it was first introduced on the market in 2013 and the ABMax™ is still sold with the same instruction manual that teaches users to perform every limitation of Claim 16.

To prove contributory infringement, BlephEx must show 1) direct infringement, 2) the accused infringer had knowledge of the patent, 3) the component has no substantial noninfringing uses, and 4) the component is a material part of the invention. 35 U.S.C. §

11

271(c).  The Court has already concluded the first and second factors are met.  Further, where as here, the accused product's instructions teach the end user to infringe, and there is no evidence that these users are ignoring the instructions, the product has no substantial non-conforming use.  *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1363-64 (Fed. Cir. 2006).  Finally, the ABMax™ device is a material part of the invention as it is the "electromechanical device" recited in Claim 16 for practicing the claimed method.

Defendants counter that Plaintiff is not likely to succeed on the merits of its infringement claims because all of the infringing acts that Plaintiff complains about occurred prior to the issuance of the '087 Patent. This argument is not well taken where Defendants have filed a pleading in the parallel '718 Litigation alleging they continue to market, sell and induce others to use the ABMax™ device to treat anterior blepharitis and a review of Defendants' website confirms these allegations.  *See Myco Industries, Inc. v. BlephEx, LLC*, Case No. 19-10645, ECF No. 88, PageID.4803, 4805.

### 2.  Validity

Defendants also argue Plaintiff cannot establish a likelihood of success on the merits because the '087 Patent is likely invalid based on the prior art reference Nichamin. Conversely, Plaintiff argues the '087 Patent is presumed valid under 35 U.S.C. § 282 and, in any event, Defendants cannot show Nichamin anticipates or renders obvious the inventive method claimed in the '087 Patent.

Nichamin is titled "Eye Treatment" and is directed to "[m]ethods and kits for treating or preventing an eye condition or for cleaning an eye area tissue."  Defendants argue Nichamin anticipates or renders obvious claim 16 of the '087 Patent.  Defendants refer the Court to Nichamin's Figure 2, which shows using a swab to remove debris from an eyelid margin, and to Figure 3, which discloses an electromechanical device.  However, absent from Figure 2 is the electromechanical device, and Figure 3 likewise fails to disclose a swab.

At the October 5, 2020 hearing on this matter, Defendants argued Figures 2 and 3 are different perspectives of the same embodiment.  Defendants' interpretation of Nichamin is mistaken where the specification states that it "sets forth illustrative embodiments, in which the principles of the invention are utilized" with Figure 2 showing "a perspective view of the eyelid margin" with the "[h]ead of wand is chafing posterior eyelid margin" and Figure 3 showing another embodiment with a "hand-held device dispensing mixture of an abrasive and an isoprenoidal essential oil." ECF 21, PageID.1049-50, 1052.  In order to anticipate a claim, the prior art must disclose all of the elements of the invention "arranged as in the claim."  *Finisar Corp. v. DirecTV Grp., Inc.,* 523 F.3d 1323, 1334-35 (Fed. Cir. 2008).  Nichamin does not disclose combining the applicator device (74) of Figure 3 with a swab.  Because Nicahmin fails to disclose the limitation of a "swab [] being moved by an electromechanical device," it cannot anticipate Claim 16.

Moreover, the Examiner considered Nichamin and allowed the '087 Patent to issue. Defendants argue the Examiner failed to consider Nichamin because he did not substantively discuss it before allowing the claims. However, it is "presumed that public officials do their assigned jobs." *Tinnus Enter., LLC v. Telebrands Corp.*, 733 F. App'x 1011, 1020 (Fed. Cir. 2018) (quoting *Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 939 (Fed. Cir. 1990)). Based on the foregoing, Defendants have not shown a substantial question as to the '087 Patent's validity based on anticipation.

Defendants' obviousness argument is unsupported with any expert evidence demonstrating that it would have been obvious to one of ordinary skill in the art to attach a swab to the end of Nichamin's hand-held device. Without more, the Court cannot conclude Defendant has raised a substantial question as to the '087 Patent's validity based on obviousness. *InTouch Techs., Inc. v. VGO Commc'ns, Inc*., 751 F.3d 1327, 1352 (Fed. Cir. 2014) (finding that conclusory expert testimony "that one of ordinary skill in the art could combine these references, not that they would have been motivated to do so . . . failed to address why one of ordinary skill in the art at the time of the invention, which was 2001, would be motivated to combine these references."); *see also Tinnus Enterp.,* 846 F.3d at 1207 (recognizing "a patent composed of several elements is not proved obvious merely by demonstration that each of its elements was, independently, known in the prior art," thus, it is "important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the

elements in a way the claimed new invention does.").  Nichamin is directed to "methods and kits for treating" ocular disorders by "administering an isoprenoidal essential oil to eye area tissue, chafing eye tissue with an abrasive, and removing the abrasive." Defendants fail to explain how one of ordinary skill in the art would have addressed the safety concerns of attaching a swab that is soaked in an abrasive to the Nichamin hand-held device.

Based on the foregoing considerations, the Court concludes Plaintiff has established a strong likelihood of proving its infringement claims and Defendants have failed to demonstrate a substantial question of validity.  As such, this factor favors entry of a preliminary injunction.

### C. Irreparable Harm

BlephEx argues it has already been irreparably harmed by Defendants' infringement and, absent an injunction, BlephEx will continue to be irreparably harmed. Myco argues BlephEx cannot show irreparable harm because all of the harm BlepEx has suffered occurred prior to the '087 Patent's issuance date, thus it could not have been caused by Myco's alleged infringement.  Moreover, Myco argues all of BlephEx's purported harm can be compensated monetarily and is therefore not irreparable.

Here, the record shows, and Defendants do not dispute, that BlephEx and Myco are direct competitors in a small market for eyelid margin and eyelash cleaning methods and devices for the treatment of blepharitis. This fact weighs in favor of Plaintiff.  *See*

*Douglas Dynamics,* 717 F.3d at 1345 ("Where two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented invention."); *see Tinnus Enter.,* 846 F.3d at 1200-01 (affirming preliminary injunction where patent owner and accused infringer are direct competitors); *see also Metalcraft of Mayville*, 846 F.3d at 1368 (same).

Irreparable harm may also be shown by evidence of price erosion, loss of goodwill and damage to reputation.  *See Aria Diagnostics, Inc. v. Sequenom, Inc*., 726 F.3d 1296, 1304-05 (Fed. Cir. 2013).  Since the introduction of the ABMax™ into the market, Plaintiff has been inundated with requests from customers and potential customers to lower its prices specifically to match the ABMax™ price.  Plaintiff has already suffered price erosion since it has lowered the BlephEx® price by 33%.  Former loyal customers have abandoned the BlephEx® device in favor of the less expensive, device.  Finally, potential customers have mistaken the ABMax™ for the BlephEx® device.

Defendants complain that all of the evidence of confusion, price erosion and loss of goodwill occurred prior to the issuance of the '087 Patent. As an initial matter, the Court will again note that Defendants concede they continue to market and sell the ABMax™ and their website confirms this concession.  Plaintiff also produced a post-issuance email, sent on October 29, 2019, from a former customer complaining that he did not want to pay double for the same product. This is sufficient to establish ongoing

irreparable harm when considered in conjunction with the significant evidence of pre-issuance loss of goodwill and sales along with price erosion.

In *Tinnus Enterprises, LLC*, the Federal Circuit addressed the same argument that Defendants advance here and rejected the accused infringer's suggestion that irreparable harm must be measured solely from the date the patent issues. *Tinnus Enter., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1207-08 (Fed Cir. 2017). "[M]ost of the *Tinnus* [patentee's] examples" of price erosion, consumer confusion, reputational harm and loss of goodwill "pre-dated the issuance of the" patent. *Id*. at 1201. In rejecting the accused infringer's argument, the *Tinnus* court first noted the lack of authority prohibiting "reliance on evidence of irreparable harm pre-dating the patent's issuance." *Id*. at 1207.

The *Tinnus* court further explained "[e]vidence of consumer confusion, harm to reputation, and loss of goodwill pre-dating the patent is, at the very least, circumstantial evidence demonstrating the possibility of identical harms once the patent issues." *Id*. For example, the *Tinnus* court found "pre-issuance price erosion evidence may be relevant to show what would happen if [the infringer] was no longer on the market." *Id*. at 1207-08. The *Tinnus* court theorized that such evidence might show the patentee "could raise its price back to the original price point but would not be able to do so as long as competition from [the infringer] remains." *Id*. at 1208.

Of course, in affirming the district court's finding of irreparable harm, the *Tinnus* court did not solely rely on pre-issuance evidence of consumer confusion, price erosion

and loss of goodwill. *Id*. However, the post-issuance, "additional evidence of harm" required to support a finding of irreparable harm was not an onerous hurdle to overcome. *Id*. Ultimately, the *Tinnus* court relied upon a post-issuance customer review showing consumer confusion between the patentee's and infringer's products, along with extensive pre-issuance evidence of price erosion, consumer confusion and loss of goodwill to affirm the district court's conclusion that the plaintiff had established irreparable harm. *Id*.

Like the facts in *Tinnus*, the record here consists of ample pre-issuance evidence of customer confusion, loss of sales, goodwill and price erosion. This case involves more post-issuance infringement compared with the circumstances in *Tinnus,* where Defendants have admitted in the parallel litigation that they continues to market, sell and induce others to use the ABMax™ device to treat anterior blepharitis. Finally, there is "additional evidence of harm" subsequent to the '087 Patent's issuance date. Similar to the facts in *Tinnus*, BlephEx's former customer sent a complaint about paying double the price for Plaintiff's product after the USPTO issued the'087 Patent.

Defendants do not suggest that they have altered the ABMax™ or changed its instruction manual. Plaintiff is unable to withstand these financial blows from an infringer profiting from the '087 Patent's inventive method for treating ocular disorders. *See Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1368 (Fed. Cir. 2001) ("Given the testimony of the likelihood of price erosion and loss of market position

without corresponding market expansion from the introduction of [the accused infringer]'s product, we see no deficiency in the district court's finding of irreparable harm."). Contrary to Defendants' assertion, Plaintiff's harms cannot be fully compensated monetarily. Plaintiff's small business is threatened with extinction if Defendants do not stop their infringing acts because the BlephEx® sales prices will remain depressed. Moreover, Defendants do not advance evidence demonstrating an ability to satisfy a monetary judgment. Based on the above considerations, the Court concludes Plaintiff has established it will suffer irreparable harm absent preliminary injunctive relief.

### D. Harm to Others

BlephEx argues that the balance of hardships are in its favor because it is a small company that cannot absorb the lost sales and price erosion from a direct competitor selling an infringing copy of its core product. The year prior to entry of the accused ABMax™ device, BlephEx sold 118 Blephex® products. Plaintiff cannot remain afloat if it has to wait until the scheduled trial date of January 2022 because of the price erosion and continued consumer confusion, loss of sales and goodwill.

Defendants respond that the harm they will endure "dwarfs the alleged harm to BlephEx." Defendant Myco argues its main product is the ABMax™ device, thus the company would lose 80% to 90% of its sales.

This factor favors BlephEx, which invested the time and research for this novel invention and treatment method and Defendants have copied it and induced others to directly infringe Plaintiff's patented invention with the ABMax™ and its instruction manual.  "One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Winsufring Int'l Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986).

### E.  Public Interest

BlephEx argues the public interest will be served with a preliminary injunction because the public favors protecting patent rights and excluding an infringer will discourage "cheap copies of patented inventions" from entering the marketplace and will encourage innovation.

Myco argues a preliminary injunction will not be in the public interest because it will harm eye care professionals and, in turn, the public because they will be precluded from purchasing Defendants' less expensive ABMax™ device for the treatment of anterior blepharitis.

The Court finds this factor favors BlephEx.  The public interest is not served by allowing Defendants to sell a lower price blepharitis treatment device where the ABMax™ is a near copy and practices each and every element of Claim 16 of BlehEx's '087 Patent.  The copying of patented inventions, as here, "ha[s] the effect of inhibiting innovation" and "[t]his detrimental effect . . . outweighs any interest the public has in

purchasing cheaper infringing products." *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345-46 (Fed. Cir. 2013).

Myco's assertion that people with blepharitis will suffer without access to the less costly ABMax™ device lacks merit. Myco's advertisements reveal that its actual marketing tactic involves encouraging doctors to maximize *their* profits by purchasing the ABMax™ device, and not to pass those savings on to the patient. Finally, Myco's reliance on *Abbott Cardiovascular Systems* is misplaced because the facts there are distinguishable from those present here. *See Abbott Cardiovascular Sys. V. Edwards Lifesciences Corp*., No. 19-149 (MN), 2019 U.S. Dist. LEXIS 104628 (D. Del. Jun. 6, 2019). In *Abbot Cardiovascular*, because the accused device was potentially life saving and was not interchangeable with the patentee's device, thus the public benefited from having both products available on the market. *Id.* at *18. These facts are not present here.

## IV.   CONCLUSION

Upon consideration of the relevant factors, the Court concludes that all of the factors strongly favor Plaintiff. Accordingly, the Court will enjoin Defendants from selling or offering to sell the ABMax™ device until a final judgment is entered in this action.

For the reasons articulated above, Plaintiff's Motion for Preliminary Injunction [ECF No. 10] is GRANTED.

The Court will conduct a hearing on the amount of bond on **December 9, 2020 at 10:00 a.m**. Plaintiff shall file its brief regarding the bond amount no later than October 29, 2020.  Defendants shall file their brief regarding the bond amount no later than November 20, 2020.  Plaintiff shall file a reply no later than November 30, 2020.

SO ORDERED.

Dated:  October 8, 2020                              /s/Gershwin A. Drain
                                                      GERSHWIN A. DRAIN
                                                      United States District Judge


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
October 8, 2020, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager